## GREGORIO CORTEZ v. THE STATE.

### No. 2696. Decided June 15, 1904.

**1.—Continuance—Testimony Not Probably True.**

Where the testimony of the absent witnesses as stated in an application for continuance, if material, was not probably true in the light of the record, there was no error in overruling the application.

**2.—Confessions—Warning—Submitting Issue to Jury.**

Where by reason of apparent contradiction as to whether the defendant was properly warned before making a statement, there was no error that the question was submitted to the jury by a charge of the court, to the effect that unless they found from the evidence beyond a reasonable doubt that the witness warned defendant that his statement could be used against him and not "for or against him" they should not consider such confession.

**3.—Same—Voluntary Statement—Answer to Statement.**

The mere fact that the witness informed appellant that his codefendant was laying the killing upon him, would not render the testimony inadmissible, on the ground that accused was being compelled to testify against himself, or that there was any compulsion growing out of said statement.

**4.—Evidence—Res Gestae—Other Homicides.**

Where the testimony as to another homicide by defendant, throws light upon the homicide for which he is being tried, is part of the res gestæ and tends to indicate the intent and purpose of defendant and is properly limited for said purpose in the court's charge, it was admissible in evidence.

**5.—Same—Testimony Drawn Out by Defendant.**

Where part of the circumstances of another homicide were drawn out by appellant and such additional facts other than those drawn out by appellant, could not, in the nature of things, have been prejudicial to the rights of defendant, there was no error.

**6.—Same.—Cross-Examination—Redirect Examination.**

Where the State simply introduced the circumstance of another homicide over the objections of defendant, and the defendant on cross-examination of State's witness brought out the additional fact that he did not fire at the deceased in said other homicide until the said deceased had shot down defendant's brother and had also fired at him, there was no error to permit the State to prove on redirect examination additional facts and circumstances of said homicide.

**7.—Evidence—Officer's Right to Act Without Warrant.**

Testimony that a homicide had been committed and that the guilty party was made known to the sheriff, who upon such information pursued the accused without a warrant of arrest to prevent his escape, held, conversations between the sheriff and others as to the whereabouts of the offender are admissible in evidence upon trial of defendant for the murder of said sheriff to show that officer's legal right to act without a warrant and to be at the place where he was killed.

**8.—Charge of the Court—Principals—Accomplice.**

Where the testimony demonstrates conclusively that appellant and his codefendant were acting together in the commission of the crime, it was proper that the court charged on the law of principals and refused to submit the issue of accomplice testimony.

**9.—Charge of the Court—Harmless Error.**

Where the charge of the court to the effect that the defendant acted so precipitately that the officer had no time to make an announcement to him, then the question of whether the arrest or attempted arrest was lawful was not important, so far as having a warrant by the officer was concerned, could not injure the rights of defendant, in as much as there was no evidence showing an arrest or attempted arrest, it was harmless error.

**10.—Same.**

Where the evidence does not raise the issue of unlawful arrest, a charge predicated upon an inaccurate statement of the law of unlawful arrest could not injure the rights of appellant and is harmless error.

**11.—Same—Self-Defense.**

See charge quoted in opinion which admirably presents all the law applicable to defense of appellant, to be adduced from the record.

**12.—Charge of the Court—Unlawful Arrest.**

Although according to the evidence deceased was legally upon the ground to arrest defendant, there was no evidence that he attempted to do so and there was no error in refusing a special charge on this question.

Appeal from the District Court of Colorado. Tried below before Hon. M. Kennon.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*B. R. Abernathy, S. A. Belden, Jr.,* and *J. R. Wooten,* for appellant.— Where the testimony of witnesses is material for the defense, and probably true, and where due diligence has been used to procure such testimony, and there is reasonable expectation of procuring the same at the next term of court, the court should grant defendant a continuance to procure the same; failing to do which, the court should grant the defendant a new trial. Code Crim. Proc., arts. 597, 599, 601, 800, et seq.; Adams v. State, 19 Texas Crim. App., 250.

The court erred in permitting the witness J. W. Nixon, over the objection of defendant, to testify as to the alleged confession of defendant, made to said witness. For the reason that the warning given by said witness to defendant was not the warning prescribed by the statute permitting the introduction of confessions; and because the testimony of said witness shows that said alleged confession, if made by defendant, was under persuasion, through inducement leading and causing defendant to make the alleged statement for the sake of personal benefit in the accusation against him, and because not freely or voluntarily made. Submitted as a proposition. Code Crim. Proc., arts. 789, 790; Sparks v. State, 34 Texas Crim. Rep., 86; Nichols v. State, 32 Texas Crim. Rep., 391; Carlisle v. State, 37 Texas Crim. Rep., 108.

It is improper, in the trial of a defendant for one offense, to permit testimony detailing the facts and circumstances of another transaction, not connected with the case on trial, happening at a distant place, and at an entirely different time. While the fact that defendant had killed Morris and was charged with his murder, and that the officers were hunting him for the purpose of effecting his arrest, might have been properly admitted in evidence, the detailing of the facts and circumstances of the killing of Morris could not tend to develop the res gestæ of killing of said Glover, because not done in the presence of defendant. was injurious to the defendant in this cause, and reversible error. Hill v. State, 73 S. W. Rep., 9; Chumley v. State, 20 Texas Crim. App., 547, and authorities.

The court erred in permitting the witnesses Oscar Swift, Crispin Alcantar, W. C. Howard, L. Karnstadt and A. M. Harper, over the objection of defendant, to testify as to the acts, conversations and agreements entered into by sheriff Glover and his posse before arriving at the place of killing said Glover, because not done in the presence of defendant, nor within his knowledge; not relevant to show the acts, intentions or motives of defendant; because immaterial and prejudicial to the defendant. Cortez v. State, 66 S. W. Rep., 453; Chumley v. State, 20 Texas Crim. App., 547.

The court erred in failing to instruct the jury upon the issue of accomplice, and in not instructing the jury that if not present at the killing of Glover, as an unlawful participant therein, the defendant could not be convicted under the indictment in this case. The alleged confession of defendant to the witness Nixon raised the issue of accomplice and abandoned conspiracy, if the issue of conspiracy was thereby raised at all. Penal Code, arts. 79, 74, 75, 76; Phillips v. State, 26 Texas Crim. App., 228; McKeen v. State, 7 Texas Crim. App., 631; Smith v. State, 21 Texas Crim. App., 107; Black v. State, 1 Texas Crim. App., 368.

*Howard Martin,* Assistant Attorney-General, and *S. L. Green* and *S. H. Hopkins,* for the State.

BROOKS, JUDGE.—Appellant was convicted of the murder of R. M. Glover, sheriff of Gonzales County, and his punishment assessed at con-

finement in the penitentiary for life. The killing occurred on June 14, 1901. Two days prior thereto appellant killed Morris, sheriff of Karnes County, in Karnes County. At the time Sheriff Morris was killed, Sheriff Glover was in Cuero, De Witt County. Glover proceeded with a deputy sheriff of De Witt County to Kennedy, in Karnes County, and there for the first time learned that appellant was the man who had killed Sheriff Morris. Glover, knowing the rendezvous of appellant, boarded a train in about twenty minutes after receiving the information that appellant had done the killing and proceeded as expeditiously as he could to the town of Ottine, in Gonzales County; there secured horses, and accompanied by two deputy sheriffs of Gonzales County, including Deputy Swift, and other parties, went a few miles in the country to the Schnable ranch; and there learned that appellant was at the home of Martin Roblero. He and his posse went to Roblero's. The posse divided as they approached the house from the north side; Glover and one or more companions going on the east side of the house around to the south side; and the other parties going on the west side around to the south side of the house. Immediately upon Glover getting around to a point opposite the gallery on the south side of the house, appellant and one Bonafacio Roblero, who were on the gallery, fired upon Glover and killed him. There was a general fusilade of shots on the part of the posse and appellant and his codefendant, Bonafacio. Some of the testimony tends to show that the sheriff's posse shot first; but the preponderance of the evidence shows that appellant and his codefendant Bonafacio fired the first shot. The evidence quite conclusively shows that appellant and Bonafacio Roblero killed Glover. Just prior to the time that the sheriff's posse arrived at the house, appellant informed Bonafacio that the sheriff's posse would be there after him; and asked Bonafacio what they must do, must they fight or surrender. Bonafacio replied, "We will fight." After the shooting appellant fled and was subsequently apprehended near the Texas line. In making this statement we have not attempted to quote accurately the testimony, but merely the substance of the facts.

Appellant's first assignment is that the court erred in overruling his application for continuance. We do not think there was any error in this, since the testimony, if material, was not probably true in the light of this record.

His second assignment is that the court erred in permitting J. W. Nixon to testify as to the alleged confession of defendant to him, because the warning given defendant was not such as prescribed by statute; that it was made under persuasion, through inducement leading and causing defendant to make the statement for the sake of personal benefit in the accusation against him. The witness testified that he went to the jail where defendant was confined, for the purpose of ascertaining the facts of the killing of Glover; that he informed defendant that old man Martin Roblero was trying to lay all the killing on defendant, and that his son Bonafacio Roblero was innocent of any of the

killing; that defendant might make a statement about the matter, if he wished; that any statement he might make might be used in court "for or against him." When witness informed defendant that the Robleros were laying the killing on him, it seemed to rile defendant, and he made the statement testified to by witness. The bill of exceptions presenting this matter shows that witness did state at first that the warning given was that the testimony might be used for or against him; but when recalled stated that he could swear and did swear positively that the declaration made to defendant was that the testimony could be used against him. By reason of this apparent contradiction the trial court submitted the question of warning as a fact to be determined by the jury, and told them that, unless they found from the evidence beyond a reasonable doubt that the witness warned defendant the statement could be used "against him" and not "for or against him" they should not consider said confession. That is all appellant could legally insist upon, and there was no error in admitting the testimony of the witness. Nor was there any error in the court submitting the question as one of fact for the jury to determine. The mere fact that the witness informed appellant that his codefendant was laying the killing upon him would not render the testimony inadmissible, on the ground that accused was being compelled to testify against himself, or that there was any compulsion growing out of said statement. Gentry v. State, 24 Texas Crim. App., 80.

Appellant's third assignment is that the court erred in permitting witness D. P. Choate, over the objections of defendant, to testify as to the facts and circumstances attending the killing of W. T. Morris, sheriff of Karnes County, in Karnes County, two days before the killing of sheriff Glover in Gonzales County. (1) Because the facts and circumstances of the killing of Morris show the attempted illegal arrest of defendant and his brother by Morris, and that in killing Morris, defendant was acting in self-defense and in defense of his said brother from an unlawful and felonious attack threatening his life and the life of his brother. (2) The killing of Morris occurred a considerable distance from the scene of the killing of Glover, at a different time and place, was not connected with nor part of the res gestæ of the transaction being inquired into. (3) The action of defendant in killing Morris did not tend to explain the motive actuating defendant at the time of the alleged killing of Glover. (4) Said testimony was improper and irrelevant and immaterial to any issue made, and was calculated to and did prejudice defendant's case before the jury. The bill shows that the State offered to prove the facts and circumstances of the killing of Morris, sheriff of Karnes County. Appellant urged the objections stated, which were overruled. Witness testified that Morris was killed about June 10, 1901, at the Thulemeyer ranch, in Karnes County, about 3 or 4 o'clock in the afternoon; that he had on said day before the killing seen Morris at Kennedy; that he and Morris went to the Thulemeyer ranch; that witness went as interpreter; that Morris went for the pur-

pose of arresting defendant; that he did not arrest defendant because defendant killed Morris. Witness saw the shooting; witness had no weapon; that when witness and Morris went up to defendant's house, defendant, his wife and children and brother were there; that his brother's name was Romaldo. This was all that was proved by the State on direct examination. Appellant's counsel thereupon asked witness the following question: "Is it not a fact that before defendant shot and killed or wounded Morris that Morris right then and there had shot Romaldo down, and had then shot at defendant." To which witness replied in the affirmative. On redirect examination, the State proved that just before Morris shot Romaldo, Romaldo tried to grab Morris, and just before he caught him, Morris shot him and he fell. Morris told defendant he was going to arrest him for horse stealing. Defendant commenced pulling his pistol, and said "Nobody can arrest me." Romaldo ran at Morris and tried to catch him, and Morris shot him, and he fell. At the time defendant said nobody could arrest him, and attempted to draw his pistol, Morris was standing with his hands down by his side; witness stayed there until the fight was over, and then ran off. On re-cross and redirect examination witness further testified in regard to said facts and circumstances of the killing. We do not believe the court erred in admitting this testimony. It appears that part of the circumstances of the killing were drawn out by appellant, and such additional facts other than those drawn out by appellant, could not, in the nature of things, have been prejudiced to the rights of defendant. Furthermore, we hold that said testimony was admissible to show motive, and as suggested in Cortez v. State, 43 Texas Crim. Rep., 384, to explain the conduct and motive of the officers and posse seeking to arrest defendant and throw light upon the whole transaction. It was in fact a part of the res gestæ of the homicide, and would tend to indicate the intent and purpose of defendant in what he did. We note in this connection that the court properly limited said testimony for said purpose in his charge to the jury.

The fourth assignment is that the court erred in permitting Oscar Swift to testify, over the objections of defendant, to facts concerning and connected with his first hearing of the death of Morris, and the acts and conversations thereafter had by and between himself and Glover; and conversations with other persons after hearing of the death of Morris and before arrival of Sheriff Glover and posse at the scene of the killing of Glover; because the proof fails to show that defendant was present; immaterial to any issue; that this testimony could be used only to explain the acts and purpose of the sheriff and posse, which were not a proper subject of investigation. This witness testified that he heard of the death of Morris at Cuero, about 5 o'clock p. m. on June 12, 1901; that he informed Glover of the fact; that he and Glover started from Cuero about 9 o'clock that night, went to Davey, in De Witt County, and from there to Smiley, in Gonzales County, looking for a person they supposed to be the one who had killed Glover; and

from Smiley back to Davey, where they stayed all night. From Davey to Yorktown, in De Witt County, where they took the train to Kennedy, Karnes County. At Kennedy they met the district attorney, who informed them that defendant had killed Morris; that they immediately took the train for Ottine, in Gonzales County, passed through Yoakum and Gonzales; that Glover phoned from Yoakum and had Crispin Alcantar and Tip Davis to meet them; that on their arrival at Ottine, Glover arrested some Mexicans and turned them over to witness; that they started across the river, and divided, one party going to Denham's and the other to Henry Schnabel's house. That on receiving certain information witness went in a hurry for Glover, who soon came; they thereupon went to the house of Roblero, where Glover was killed. The bill refers to the statements of facts, which shows substantially that witness testified as indicated and in the statement at the beginning of this opinion. Article 250, Code of Criminal Procedure, provides: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the person accused." In Morris v. Kasling, 79 Texas, 141, construing this article, it was held, that in order to make it the official duty of a peace officer to arrest under this article it is necessary that the guilty party should be made known as well as the fact that a felony has been committed. If the sheriff has been informed of the commission of a felony, and is in pursuit without a writ, it is his duty to arrest defendant; and it is certainly his duty to inquire from other sources where defendant could be found, in order that he might make the arrest. Hill v. State, 37 Texas Crim. Rep., 415. We hold that this article clearly authorizes the introduction of this testimony, since it appears that as soon as being informed who committed the homicide in Karnes County, deceased (Glover) immediately proceeded with all reasonable expedition to the place where defendant was found. The mere fact that he could, by the exercise of superhuman forethought or judgment, have secured a warrant would not preclude him from doing his duty under the article quoted. The law is a reasonable thing, and the mere fact that he passed through Gonzales, the county seat, where by stopping, or by the exercise of superhuman precaution he could have secured a warrant, would not prevent the sheriff from being protected under the provisions of this article in his effort to make an arrest without warrant. As soon as appellant killed deceased in Karnes County he fled precipitately, deceased tracing him with marvelous accuracy to his rendezvous in Gonzales County, and to say his act would be illegal for the simple reason that he might have, by the exercise of extraordinary prudence, secured a warrant, is dallying with the provisions and spirit of the statute quoted. We therefore hold that said testimony was entirely germane, pertinent to and relevant to the issue under consideration, to wit, whether there had been a felony, and the party escaped, and there

was no time sufficient to get a warrant. The expedition with which the officer pursued appellant, his mode and manner of doing so, the places he went, the care manifested; the research made in ferreting out defendant, was germane testimony to this issue, and clearly illustrative and demonstrative of his right, under the statute, to act without warrant. We accordingly hold that when Sheriff Glover reached the place where he lost his life, he was there legally under the provisions of this article; and that said testimony was admissible.

Appellant's fifth assignment complains that the court erred in admitting the acts of R. M. Glover, deceased, and his posse from the time they left Ottine until they reached the scene of the killing. This matter is discussed in the previous assignment.

The seventh and eighth assignments complain of the action of the court submitting the law of principals. The testimony in this case shows that defendant, two days before the killing of Glover, had killed. Morris; that he was at the house of Martin Roblero, where Glover was killed; that defendant was sitting on the steps talking to Bonafacio Roblero, who was wanted by the officers also. While sitting on the south steps of the house, defendant said to Bonafacio that Glover was coming after them, and asked the question, must we surrender or fight? To this Bonafacio replied, "We will fight, and have another man to help us." About that time Glover appeared at the southeast corner of the house, and the killing occurred. The testimony of witness Swift shows that defendant stated to him that he and Bonafacio were sitting on the gallery talking, and the first man he saw was on horseback, and as he appeared around the corner of the house he and Bonafacio both fired at him, and he (defendant) ran towards the crib; when he got near the crib he threw his pistol back and fired two or three more shots, either in the air or towards the house. The record shows that the first man who came around the southeast corner of the house was deceased; and the testimony also shows that the first shots fired were from the front of the house and could not have been fired by one person. The testimony further shows that barefoot tracks led from the house going in the direction of the crib. Two pieces of vest were found in the lot next morning, by Swift, with grass burrs in them. Defendant told Swift that he tore his vest in two for the purpose of putting on his feet to protect them from grass burrs. Defendant was barefooted. We think this testimony clearly authorized the court to charge on the law of principals, since it demonstrates conclusively that appellant and his codefendant Bonafacio were acting together in the commission of the crime. Appellant insists that the testimony shows he fled, and the issue of accomplice testimony ought to have been submitted. To this we can not agree.

The ninth assignment is that the court erred in charging the jury upon the guilt of defendant, in the event that the jury should find Glover was killed by Bonafacio, because there was no evidence tending to show that Bonafacio did unlawfully kill said Glover. We can not agree to this proposition. The statement above shows that Bonafacio was acting

with defendant at the time Glover was killed; and if either killed him, they were coconspirators and principals in the crime.

His eleventh assignment insists the court erred in the following portion of the charge: "If the defendant acted so precipitately that the officer had no time to make any announcement to him, then the question of whether the arrest or attempted arrest was unlawful is not important, so far as having a warrant by the officer is concerned." We do not find any evidence in this record showing an arrest or attempted arrest. The officer, as stated above, was legally upon the ground. From the State's standpoint defendant immediately shot at him and killed him. Appellant insists under his testimony that the posse shot at defendant first. If the State's evidence be true, there was no arrest; and if defendant's testimony be true, whether deceased was legally upon the ground is immaterial. That is, even if legally authorized to make the arrest and he shot at defendant and killed him, he would be guilty of some grade of culpable homicide, and defendant would have the right to shoot in his necessary self-defense. In giving this charge there could be no error such as would injure defendant.

Appellant's thirteenth assignment complains of the charge of the court in paragraph 13, in restricting defendant's right to resisting an unlawful arrest to his knowledge that the arrest about to be made was unlawful; that the fact that such attempted arrest was unlawful gave defendant the right to resist it, regardless of his knowledge whether or not it was unlawful. To support this proposition, appellant refers us to Cortez v. State, 69 S. W. Rep., 536. There we said: "If the authority to make arrest is wanting, the person attempting such arrest is in the wrong and a trespasser, and the person so arrested can resist him regardless of his knowledge that the arrest was illegal, using only such force as is reasonably necessary to prevent the arrest or to free himself from such illegal arrest." State's counsel insists that this charge does not contravene the doctrine laid down in Sherwood v. State, 29 Texas Crim. App., 334, and Miller v. State, 31 Texas Crim. Rep., 609. However, the majority of the court hold that the Cortez case, supra, does qualify the doctrine laid down in said cases; but the writer does not agree to this proposition. I am at a loss to know how there could be manslaughter without the knowledge of the facts which would constitute manslaughter. But concede the accuracy of the Cortez case, supra. The evidence in this case, as stated, does not raise the issue of an unlawful arrest. Then, if there is no issue of unlawful arrest, a charge predicated upon an inaccurate statement of the law of unlawful arrest could not injure appellant. The court in this connection charged the jury as follows: "A peace officer has no right to arrest a person for a felony not committed in his presence, without a warrant, except under circumstances hereinbefore stated. If an arrest is about to be made by a peace officer without warrant, and he has had time to procure a warrant for such arrest, then such attempted arrest would be unlawful, and if a party about to be arrested knows that the arrest about to be made

is unlawful, then he has a right to resist such arrest by any means which under the circumstances are necessary to prevent such arrest." Under the Cortez case, supra, this charge would be erroneous. But how could it injure appellant? In a subsequent charge the court properly and correctly stated the law of self-defense, as follows: "If you find from the evidence that at the time and place charged in the indictment, defendant did kill the said R. M. Glover, by shooting him with a gun or pistol, but that when he so shot Glover, it reasonably appeared to defendant, judging from his standpoint alone, from some act then done by Glover or by him, and by any one or more of the posse with Glover, or by any one or more of them, or by such act accompanied by words, that Glover or any of his posse was about to kill him, the defendant, or some other person with the defendant, or at the same place, or to do him some serious bodily injury, you will acquit the defendant; or if you have a reasonable doubt as to whether the defendant acted in self-defense, or in defense of another, from real or apparent danger from an unlawful attack, such as produced a reasonable expectation or fear of death or some serious bodily injury, you will acquit the defendant. If you should find that the said R. M. Glover was killed by the said Bonafacio, and that Bonifacio acted in defense of himself or another, or if you have a reasonable doubt upon this point, you will acquit defendant; and you will apply in case you find that Glover was killed by Bonafacio, the whole of this paragraph of the charge on the question of self-defense or defense of another, as if Bonafacio were therein named instead of the defendant." This charge admirably presents all the law applicable to the defense of appellant to be adduced from the record before us. What fact is there in this record that suggests arrest? We find none whatever. The officer, as stated, was legally upon the ground; the State's evidence shows that defendant shot at him; that Bonafacio Roblero joined in this assault. If this be true, defendant would be guilty of murder in the first or second degree or manslaughter, and all these phases of the law applicable to this state of facts are admirably presented by the court's charge. On the other hand, defendant's testimony shows that the officers came up and immediately fired upon him; that he returned this fire. Clearly the above charge on self-defense covers every possible phase of this last statement of facts.

Appellant insists that the court should have told the jury that the attempted arrest was unlawful. This proposition is embodied in a special charge. In our opinion, there was no attempted arrest, though deceased was legally upon the ground for that purpose. There are various other special charges requested, but so far as applicable they were given in the main charge of the court.

Appellant further insists that the evidence is not sufficient to support the verdict. To this we can not agree. In our opinion it amply supports the proposition that appellant is guilty of murder in the first degree. The judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]