BILL BICKHAM V. THE STATE.

No. 16569.   Delivered June 20, 1934.

The opinion states the case.

L. D. Hartwell, of Greenville, and Wm. J. Fanning, of Sulphur Springs, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin for the State.

HAWKINS, JUDGE.—Convicion is for burglary, punishment being 12 years in the penitentiary.

Upon original submission we declined to consider appellant's bills of exception, it appearing from the transcript then before us that the motion for new trial was overruled on Sep-

tember 16, 1933, at which time the court granted eighty days in which to file bills of exception. It is now made known to the court by proper showing that the motion for new trial was not acted upon until the 5th day of October, 1933, and that the date of the order as shown in the transcript as of September 16th was an error of the clerk in preparing the transcript. The bills of exception were in fact filed within the time originally allowed by the court, and are entitled to consideration. In view of the questions raised in some of the bills we conclude that we were in error in ordering an affirmance of the judgment, and the original opinion to that effect is withdrawn, and this opinion will be substituted therefor.

The house burglarized was a store belonging to J. D. Stewart, situated at Brashear, in Hopkins County, Texas. W. N. (Hank) Strickland was night watchman at the time of the burglary. He was acquainted with appellant, having been introduced to him some fourteen or fifteen days prior to the burglary by one Bill Mitchell. Strickland's testimony is substantially as follows: On the night of the burglary witness was in a cafe when appellant called to him, inquiring where he could secure some gasoline. Witness went out on the sidewalk to show appellant where gasoline could be obtained. Appellant drew a pistol, and sticking it into witness' side, marched him around behind Stewart's store where Bill Mitchell and Jack Adams were. An attempt was made to prize the back door of the store open. This failed. Some one said there was a padlock on the front door which could be twisted off.

While appellant held the gun on witness, Mitchell and Adams went to the front of the store, broke the padlock and entered. They came through the store and broke the lock off the back door and opened it from the inside. Witness was taken inside the store, his feet and hands tied up with a rope, and then tied to the bars across one of the windows. He was fastened in such way that he could not release himself. Mitchell and Adams then undertook to break into the safe, but were unsuccessful in that effort. Witness could hear them moving around in the store and saw them leave, taking several bundles with them. This occurred about twelve o'clock on Friday night. The night watchman was not released until parties came to the store the next morning. On Saturday morning about six o'clock appellant and Mitchell appeared in Dallas at a room occupied by Joe Price and Jack Price who were brothers. Appellant and Mitchell had several bundles with them which contained shirts, underclothes and socks. On Sunday officers went

to the Price brothers' room and found a quantity of the goods stolen from Stewart's store in a closet in the room. Appellant and the two Price boys were present. Appellant did not testify. He offered testimony of other witnesses raising the issue of an alibi, which was properly submitted to the jury. He also offered a witness by the name of Simrell who testified that about the 24th day of March he went with appellant to a store on Main Street in the City of Dallas and saw appellant buy four shirts and three or four suits of underwear. He declined to be positive that the clothes pointed out at the time of the trial were the shirts and underwear which he claims to have seen appellant purchase, but testified that they resembled those which he had seen appellant buy.

By objection to the court's charge, by special charges requested and by proper bills of exception two questions are presented which appear to be serious. They were evidently so regarded by our State's attorney as reflected by his brief in this cause. The State used as witnesses both Joe and Jack Price, who testified that at the time appellant and Mitchell came to the room on Saturday morning with the bundles of clothing they told the Price boys they had bought them. It is insisted by appellant that his explanation proven by the State made by him and Mitchell at the time their rightful possession of the property was first questioned, in connection with the testimony of Simrell, raised the issue of purchase by appellant of the property found at the Price brothers' room, and that the court should have instructed the jury affirmatively upon the issue of purchase raised by such testimony. The omission of such instructions was pointed out by written objections, and also by a special charge which in substance would have instructed the jury that if they believed from the evidence, or entertained a reasonable doubt thereof, that the shirts found in the possession of appellant were purchased by him the jury should acquit. In view of the testimony of the night watchman and other evidence in the case the jury would have been warranted in finding against appellant upon the issue of purchase, but it was not for the trial court, nor is it for this court, to determine such issue of fact. The testimony of the night watchman made out a case of burglary against appellant and the requested charge to acquit if he purchased the property taken by him to the Price boys' room was not correct. The charges should have been to not regard the possession of such property as a circumstance against him if the jury believed he purchased it, or had a reasonable doubt thereof.

The other serious question presented is the contention that the court should have submitted to the jury under appropriate instructions whether the Price brothers were accomplice witnesses. Both the Price boys testified that appellant and Mitchell came to their room in Dallas about six o'clock on the morning of Saturday, March 25th, and waked them up. They said they "had some stuff." They were asked a number of times by each of the Price boys where they got it and responded that they had bought it. Appellant and Mitchell put several shirts, some underwear and socks in a closet in the Price boys' room. Joe Price testified that Mitchell had been staying with them since the previous May and would come in quite often, and sleep there occasionally; that it was not unusual for either Mitchell or appellant to come to the apartment at six o'clock in the morning, but "it was unusual for them to bring a bunch of merchandise." Jack Price testified that when he inquired of appellant where they had gotten the clothing Mitchell said he had bought it from a Jew on Elm Street and that he (Jack Price) said, "Are you sure you bought those things?" and that Mitchell replied, "I certainly did, I received five dollars through the mail on Thursday and that is where I got the money to buy them with." Mitchell and appellant gave each of the Price boys a shirt and a suit of underwear. We quote from the testimony of Jack Price:

"I wondered where they got them, (referring to the goods) and asked them twice where they got them. * * * When they brought it there I thought they were stolen, and I asked them where they got them and if they were stolen, and they said they were not, and they never had brought anything to my house that was stolen * * * I said, 'If they are stolen take them away from here. I don't want them here if they are stolen'."

It further appears from the record that the Price boys were arrested at the time the property was recovered, were placed in jail where they remained several days. One of them testified that after he and appellant were released on bond he had a conversation with appellant in which the latter admitted that he, Mitchell and Adams had committed the burglary under investigation. It is apparent from the testimony of each of the Price boys that they at least were suspicious that the property left at their apartment had been stolen. It was found in their possession. It is not disclosed from the record whether they explained to the officers how the property came into their possession at the time the officers found and recovered it, or whether the explanations came after they had been placed in

jail. Upon a further consideration of the facts we conclude that the court should have submitted to the jury under appropriate instructions the issue whether the Price boys were accomplice witnesses. Their explanation of the presence in their room of the goods comes from them alone; they also had on some of the stolen clothes; these facts, together with other circumstances in the case, raise an issue of fact which we think the jury should have passed upon. It is the general rule that where one is shown to be connected with an offense, or with the fruits of the crime, in such way as to characterize him as an accomplice witness unless his connection therewith be of an innocent nature, said witness cannot by his own testimony alone establish his innocent intention or connection. Whether his relation to the crime under such circumstances is such as to make him an accomplice witness becomes a question of fact to be determined by the jury under appropriate instructions. An exception to this rule obtains, however, when the innocent connection is shown without controversy by witnesses other than the supposed accomplice himself. Anderson v. State, 98 Texas Crim. Rep., 449, 266 S. W., 159; Samaras v. State, 94 Texas Crim. Rep., 280, 250 S. W., 685; Pauly v. State, 93 Texas Crim. Rep., 183, 246 S. W., 375; Holmes v. State, 125 Texas Crim. Rep., 354, 68 S. W. (2d) 189; Benavides v. State, 123 Texas Crim. Rep., 583, 60 S. W. (2d) 436.

There is nothing in appellant's complaint because the court failed to charge on circumstantial evidence. We do not regard the case as one depending wholly upon that character of testimony and therefore the court was not called upon to give such instruction.

There are bills of exception in the record complaining of the testimony given by the officers in regard to recovering the stolen property because the search therefor was not supported by a search warrant. There is no evidence in the record as to the recovery of any property except that found at the Price boys' apartment. Appellant did not live there and could not raise any objection to the search thereof without a warrant.

There are some bills of exception complaining of the argument of the district attorney. Some of the argument complained of is of doubtful propriety, but will not likely occur upon another trial.

For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*