A. E. SCOBEY *alias* EARL SCOBEY V. THE STATE.

No. 22351. Delivered February 10, 1943.
Rehearing Denied March 17, 1943.

The opinion states the case.

*Floyd Harry,* of Farmersville, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Robbery with firearms is the offense; the punishment, fifteen years' confinement in the State penitentiary.

The Hennigson Egg Breaking Plant, at Denison, Texas, operated in the premises of the Kraft Cheese Company, paid its employees each Saturday afternoon. The amount due each employee was placed in an envelope bearing his name.

On the morning of Saturday, June 21st, 1941, Howell, the manager of the plant, and his secretary, Miss Davidson, were engaged in making out the weekly pay roll, when a bandit, partially disguised by a handkerchief over the lower part of his face, held them up, and, at the point of a pistol, robbed them of the pay roll, which amounted to $1,923.63. At the command of the bandit, Miss Davidson placed the money and envelopes in a small cotton sack which the bandit produced.

Neither Howell nor Miss Davidson was able to identify the robber. Howell described him as a man about 5 feet 8 or 10 inches tall, weighing between 150 and 175 pounds, wearing brown khaki clothes, brown shoes, and a slouch hat pulled down over his eyes. Miss Davidson described the robber as wearing khaki trousers, a khaki jacket, with some kind of a cap or hat pulled down over his face. She said she partially noticed the eyes of the robber; and, when the appellant, upon the trial of this case, removed his glasses and exhibited himself to the witness, she was unable to identify him as, or to say that he was, the robber.

Immediately after the robbery, peace officers were notified, and they began an investigation. As a result of information received by them, officers at Durant, Oklahoma, were notified to keep a lookout for, and to apprehend, the appellant as the party who had committed a robbery at Denison.

Mrs. McGaha resided in Durant, Oklahoma. She had divided her residence into small apartments. One of these, a two-room apartment, was rented and occupied by a Mr. and Mrs. Hurst, the father-in-law and mother-in-law, respectively, of the appellant. An apartment situated across the hall from the Hurst apartment was occupied by a Mrs. Stewart. Mrs. McGaha occu-

pied an apartment to the rear of the house. One bathroom served the entire house, and to reach which from the Hurst apartment it was necessary to go around to the rear of the house, or through Mrs. McGaha's apartment.

Mrs. McGaha, testifying as a witness for the State, said that, about noon on the day of the robbery, she saw appellant, dressed in khaki clothes, coming up on the front porch of her home, carrying with him, what she called, a little brief or zipper case, which he carried into the Hurst apartment. A short time thereafter, appellant went through her apartment, to the bathroom, carrying with him the brief case and a towel.

O. J. McGaha, the 16-year-old son of Mrs. McGaha, testified that he saw appellant as he left the bathroom, and that appellant was carrying a "little white bag."

Sometime after appellant's arrival at the McGaha home, and on the same afternoon, Durant, Oklahoma, peace officers appeared and inquired of Mrs. McGaha if she had seen the appellant. Mrs. McGaha advised them that appellant came in about noon, carrying a small hand bag or brief case, which he carried into the Hurst apartment. With this information, the officers went to the Hurst apartment, where they found Mr. and Mrs. Hurst, who invited them in. Inquiry was made of them relative to appellant. They advised that he and his wife had gone to town to buy some clothes and luggage, as they were preparing to leave for California that evening. There in the room the officers saw the little bag, which Mrs. McGaha afterwards identified as the one appellant brought to the house. According to the officers, Mrs. Hurst denied that the bag was hers. She did not tell them to whom it belonged.

In the bag were found the following: $1,155.30, in currency and coins, some being in pay envelopes; a cotton sack; a pair of gloves; a .38 caliber pistol and holster; a pair of khaki trousers; a khaki shirt; and a pair of brown canvas shoes.

Shortly after the finding of the bag, the Durant officers arrested appellant, in company with his wife, while in a taxicab, returning from the shopping trip. They had with them luggage and wearing apparel, which they had recently purchased. On appellant's person, they found something like $500.00, of which $350.00 was in $10.00 bills.

Upon the trial of the case, Howell and Miss Davidson identified the cotton sack so found as being one similar to that fur-

nished by the robber and in which the money and envelopes were placed. Miss Davidson positively identified the pay envelopes so found as those taken in the robbery; she identified them by the names thereon, which were in her handwriting.

There was testimony to the effect that, about a month prior to the robbery, appellant was, during a conversation with parties in Denison, heard to say: "You know that cheese plant would be just a knock over to go up there during the payroll you know and rob the cheese plant." There was testimony that appellant was at one time employed by the egg breaking plant, and that he drew pay as such on at least two occasions.

The appellant did not testify as a witness in his own behalf, nor did he offer any affirmative defensive testimony.

Appellant brings forward numerous bills of exception, which, in reality, present, for our consideration, but two propositions; these are: (a) the admission in evidence of the testimony showing the finding of the brief case and the contents thereof; (b) the admission in evidence of the testimony showing the arrest of appellant and the subsequent search of his person.

At the outset, it is well to call attention to the fact that appellant bases his contention upon the proposition that the evidence complained of was inadmissible under the laws of this State. There is no suggestion that the laws of the State of Oklahoma are different, in any particular, from those of this State, upon the question of search and arrest, or that the search and arrest which occurred within the State of Oklahoma was violative of the laws of that state. Hence the questions presented are to be here determined, as they were in the trial court, under the laws of this State.

As to the first proposition, it is appellant's contention that the brief case was found and obtained as a result of an illegal search of his private residence, and that, by reason thereof, proof relative to its contents was inadmissible. Touching the admissibility of such testimony, much evidence was introduced out of the presence of the jury, with particular reference as to whether or not the officers forcibly entered the room, or were invited to enter same by Mr. and Mrs. Hurst, and as to whether or not the room where the brief case was found was appellant's private residence. It was conceded that the officers had no search warrant authorizing the search of any premises occupied by the appellant.

When the facts upon which this conviction was obtained are examined closely, it is made to appear that the State relied, chiefly, upon the testimony of Mrs. McGaha and her son, showing that, shortly after the robbery, appellant was in possession of the brief case, which was found to contain the fruits, or a part of the fruits, of the robbery. It was not contended by the State—nor were the facts sufficient to show—that the finding of the brief case in the room occupied, at the time, by Mr. and Mrs. Hurst, constituted proof of possession thereof by the appellant. There was no evidence before the jury that the room or premises where the brief case was found were occupied by, or were under the control of the appellant, as his place of residence. As presented to the jury, the effect of the testimony showing the recovery of the brief case and its contents served only to identify the stolen property as being that seen in appellant's possession. In the light of these facts, there is no showing here that appellant was the owner or occupant of the premises he alleges were illegally searched. In such cases, the well-established rule is that an accused cannot complain of evidence obtained in a search of a dwelling occupied by another. The right to object to an illegal search is a privilege to be exercised only by the owner of the premises searched. Comeaux v. State, 118 Tex. Cr. R. 223, 42 S. W. (2d) 255; Cobb v. State, 118 Tex. Cr. R. 214, 42 S. W. (2d) 1028; Giles v. State, 119 Tex. Cr. R. 225, 45 S. W. (2d) 591; Stephenson v. State, 120 Tex. Cr. R. 265, 46 S. W. (2d) 987; Bickman v. State, 126 Tex. Cr. R. 511, 72 S. W. (2d) 1095; Phariss v. State, 137 Tex. Cr. R. 469, 131 S. W. (2d) 905. Applying said rule in the instant case, the conclusion is reached that the testimony was admissible and that appellant has not shown himself authorized to object to the search, which resulted in the finding of the brief case.

Appellant's next contention is that his arrest by the Durant officers was illegal. It is conceded that, if the arrest was legal, same carried with it the right of the officers to search the person. If the arrest was unauthorized, the search of appellant's person was illegal. The officers had no warrant for appellant's arrest. The legality of the arrest depends upon whether or not they were authorized to make the arrest without a warrant. Upon this question, the bills of exception, as well as the record as a whole, reflect the following facts: Immediately after the robbery the officers at Denison were notified, and they began an investigation, as a result of which they found not only facts and circumstances indicating that appellant was the guilty party, but they were informed that he was in fact the perpetrator of the robbery. The officers at Durant, Oklahoma, were notified, by the officers at Denison, that a robbery had been committed; that

"they had information that a fellow by the name of Earl Scobey (appellant)" had committed the robbery, and "to apprehend Scobey"; that they had information that Scobey had married a daughter of Mr. and Mrs. Hurst, who lived in Durant.

The information so given the Durant officers caused them to go to the Hurst home, where they first contacted Mrs. McGaha, who told them that, a short time prior thereto, she had seen appellant go into the Hurst apartment, with a brief case; after which they went to the Hurst apartment and found the brief case and contents. They were then informed that appellant and his wife were preparing to leave that evening for California, and that he and his wife were then downtown purchasing clothing and luggage preparatory to taking such a trip. With this information, a search for the appellant was begun, culminating in the finding of appellant and his wife, in a taxicab, and, with them, articles of merchandise, including luggage and wearing apparel just purchased. Thereupon, the officers placed appellant under arrest and searched his person, finding the $500.00 as heretofore indicated. The question presented is: Was such arrest authorized?

The statutes of this State make provision for the arrest of a person without a warrant; among these is Art. 215, C. C. P., which reads as follows: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

The conclusion is reached that, under the facts detailed, said statute is applicable and controlling here, and that the Durant officers were authorized to arrest the appellant, at the time, place, and under the circumstances, mentioned. See: Bevins v. State, 110 Tex. Cr. R. 52, 7 S. W. (2d) 532; Rutherford v. State, 135 Tex. Cr. R. 530, 121 S. W. (2d) 342; Cortez v. State, 47 Tex. Cr. R. 10, 83 S. W. 812; Rutherford v. State, 104 Tex. Cr. R. 127, 283 S. W. 512; and 4 Tex. Jur., p. 750-752.

Bills of exception appear complaining of the opening argumen of State's counsel, wherein the following language was used: "It seems to me that the issue is uncontradicted that Mr. Howell was robbed and that a man pointed a pistol at him and his wife was threatened." The objection to the argument was that it was a reference to the failure of the appellant to testify and was violative of Art. 710, C. C. P.

We have concluded that the argument was not a reference to the failure of the appellant to testify or to contradict testimony which he alone could deny. Neither Howell nor Miss Davidson identified appellant as the robber. In fact, the State introduced no testimony showing that the appellant was of the size, height, or weight given by Howell in his description of the robber.

There was no issue as to whether Howell was robbed. The sole question was: Did appellant do it?

The language used by State's counsel did not—directly or by inference—call upon appellant to answer that question before the jury. The argument was not, therefore, a reference to his failure to testify.

Other bills of exception not covered by the conclusions expressed are overruled.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant insists that it was error to admit the testimony of Ray Davis that Mrs. McGaha, the lady in whose house appellant's father-in-law and mother-in-law lived, told Davis that appellant had come into her house that day close to noon, and that he had a small hand bag with him. Appellant is insistent that such testimony was hearsay. However, we note from the evidence that the witness Mrs. McGaha was placed upon the witness stand, and she testified to practically the same thing relative to appellant's coming into the house and having a small hand bag with him. That such direct testimony was admissible as coming from Mrs. McGaha we have no doubt, and same was not even objected to, and we can see no harm that could have been done to appellant by allowing a witness to say that Mrs. McGaha told him what she also told the jury. There was no controversy over the fact that appellant did come into her house, and this hand bag was found in the house. So the reiteration of Mrs. McGaha's uncontradicted testimony by Davis' hearsay

statement neither added to nor took from the weight of the unobjected to testimony of the landlady.

Appellant also insists that we were in error wherein we held that the arrest of appellant without a warrant was lawful. He reiterates the time elapsing between the information conveyed to the Oklahoma officers and the final arrest of appellant in that State, and endeavors to show therefrom that a sufficient time elapsed for the Texas officers to have procured a warrant for appellant's arrest. He evidently demands strict compliance not with the whole statute of our State relative to arrests without warrants, but he only demands such compliance with a portion thereof. The statute, Art. 215, C. C. P., reads as follows:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

It is noted that no person at the scene was able to identify appellant as the person who committed the robbery; that it was necessary to utilize circumstances in order to connect him with same; that two trips were made to see a woman with whom appellant had been associated and obtain from her the statement alleged to have been made by appellant as to how easy it would be to stage a holdup of the parties who were later the subject of this robbery; it further became necessary to identify appellant as the man who had recently married a certain woman in Durant, Oklahoma; it then became necessary to ascertain her name from the Oklahoma records, and her address, in order to identify appellant and find his address. It will be noted that up to this point no satisfactory evidence was in the officers' possession, save the remark made to the woman relative to the case of staging a holdup on the cheese plant. Upon their visit to appellant's address in Durant, they obtained the information that appellant had come into Mrs. McGaha's house carrying a black bag, which was similar to the one used at the holdup; they picked up a black bag and found it filled with the fruits of the crime. They were also then given knowledge of the probable route to be followed in continuing his escape by appellant, and he was soon apprehended. At the time of his apprehension he was not only about to escape, he was escaping; he had already gone from one state into another, and was a fugitive, no matter how short the distance, and the warrant, had same been obtained by the Texas authorities, would have been ineffective in Okla-

homa, unless the same had proper authentication from higher authorities.

. We think there is a further ground relative to appellant's arrest being legal, and such is found in Art. 325, C. C. P., which reads as follows:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

After the Durant officers had found the large sum of money in the black bag at Mrs. McGaha's residence, they had reasonable ground to suppose that appellant had the remainder of such money, about $500.00, on his person, and they had a right to arrest him without warrant and take the stolen property into their possession, which property seizure was openly made. See Porez v. State, 29 Tex. App. 618, 16 S. W. 750; Smith v. State, 13 Tex. App. 507; English v. State, 34 Tex. Cr. R. 190; 30 S. W. 233; Burkhardt v. State, 83 Tex. Cr. R. 228, 202 S. W. 513; also see Morris v. Kasling, 79 Texas, 141, 15 S. W. 226, 11 L. R. A. 398; Henderson v. U. S. Fidelity & Guaranty Co., 298 S. W. 404; also, idem, 10 S. W. (2d) 534.

We adhere to the view that the arrest of appellant was legal, and that the property found upon his person was properly introduced in evidence.

The motion will be overruled.