## Otis McCurley v. The State.

### No. 10874. Delivered June 1, 1927.

**1.—Burglary—Statement of Accused—Leading to Recovery of Stolen Property—Admissible.**

Where, on a trial for burglary, appellant before his arrest, made a verbal statement to officers admitting his guilt of the burglary and carried the officers to a place where some of the stolen property was concealed, such oral statements of the accused are always admissible, whether or not a warning was given, or whether they were obtained by unfair or deceitful means. See Art. 727, C. C. P.; Brown v. State, 26 Tex. Crim. App. 26, and other cases cited.

**2.—Same—Requested Charge—Properly Refused.**

Where appellant requested several special charges on the issue of principals, and embracing his defensive theory, and these issues were all covered in the main charge, and in a special charge that was given, the court properly refused other special charges on the same subject.

**3.—Same—New Trial—Objection to Juror—Properly Overruled.**

Where, in his motion for a new trial, appellant complains that one of the jurors was not a fair and impartial juror, because he was indirectly interested in some of the stolen property. The fact that one of the jurors was the manager of a subsidiary concern of the firm to whom some of the goods stolen from the box car was consigned, was developed during the trial, but no challenge to the juror was then offered.

**4.—Same—Continued.**

This court has often held that in instances of this kind the appellant cannot speculate on the result of the jury's verdict, and then after verdict be heard to complain, on his motion for a new trial. See De Arman v. State, 80 Tex. Crim. Rep. 147, and other cases cited.

**5.—Same—Requested Charge—On Issue Not Raised—Properly Refused.**

Where appellant requested a special charge on the issue of box car in question not having been actually delivered to the agent of the I. & G. N. Railroad at the time of the burglary, that fact having been clearly established, and not being contradicted, the requested charge was properly refused.

**6.—Same—Circumstantial Evidence—Charge On—Not Called For.**

Where appellant admitted that he and one Harris went to the car that was burglarized; that Harris entered the car, and handed the goods out to him in the automobile, and that same were carried away by Harris and himself and concealed, and he also took the officers to the place where the goods were found, a charge on circumstantial evidence was not called for.

Appeal from the District Court of Smith County. Tried below before the Hon. J. R. Warren, Judge.

Appeal from a conviction of burglary of a box car, penalty two years in the penitentiary.

The opinion states the case.

*Gentry & Gray; Butler, Price & Maynor* of Tyler, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of burglary, and his punishment assessed at two years in the penitentiary.

The record discloses that the appellant was charged by indictment with unlawfully and fraudulently breaking and entering a railroad car, on or about October 26, 1926, in the possession, actual care, control and management of C. E. Wood, with the intent to commit the offense of theft. It appears that Wood was a local agent for the I. & G. N. Railway Company at Tyler, Texas, and that the box car in question contained local freight billed to Tyler and other points along the I. & G. N. On the day preceding the alleged burglary, the Cotton Belt Railway Company delivered this car to the I. & G. N. at Tyler, Wood receiving it as agent for the latter company. The car was opened and "worked out" by employees of the I. & G. N., who checked the contents and took out such freight as was billed to Tyler, and then the car was closed and resealed by said employees in the evening prior to the night of the alleged burglary. The burglary was discovered about 8:00 o'clock on the following morning. The door of the car was open and a great many articles were missing therefrom, including cartons of cigarettes consigned to the Moore Grocery Company, a corporation, at Palestine, Texas. A short time after the alleged burglary, and before the appellant was arrested, he had two or three conversations with the chief of police, Tarbutton, in which he stated and admitted that he and Horace Harris took goods, including cigarettes and other articles, from the car in question. Appellant also went with the policeman and a detective employee of the railway company to a point about three miles out of Tyler and showed them where some of the goods were concealed, and assisted them in recovering same, which included a quantity of cigarettes identified as having been in the burglarized car and missing therefrom after the alleged burglary. Appellant then told the officers where they would find other articles, which were later recovered by reason of said information.

While the appellant did not testify, he defended upon the ground that the statements and admission made by him were obtained through deceit and fraud and upon a promise of immunity from prosecution made to him by Butler, a railway detective. It was his further contention that he did not receive any warning before making said admissions and statements, that they were not reduced to writing and were not voluntarily made, and that the evidence was insufficient to show that he committed the actual breaking and burglary of the car in question.

The record contains fifteen bills of exception.

Bills 1, 2 and 3 complain of the action of the court in permitting the policeman Tarbutton to testify regarding the admissions and statements made to him by appellant, as above set out, and regarding appellant going with him and showing him where the stolen goods were concealed. Appellant contends that said statements and admissions were obtained by fraud, deceit and a promise of immunity from prosecution made by the detective Butler; and that said statements were not reduced to writing and were made before any warning was given him. These bills show that appellant was not under arrest at the time of making these statements, and that the detective informed him that the railway company would not prosecute him if he would divulge his knowledge and information concerning the alleged burglary. After appellant had made the admissions in question, Tarbutton and the detective went with him to the County Attorney's office for the purpose of having same reduced to writing, and the County Attorney then informed appellant that he would not make any agreement to exonerate him from prosecution, since he, the County Attorney, already knew more than the appellant had admitted. We think the appellant's contention to the effect that this testimony was inadmissible on account of the promise of immunity from prosecution made by Butler, the detective, and because the statements and admissions were made before appellant was warned and were not reduced to writing, etc., is untenable. Art. 727, C. C. P., prohibits the introduction in evidence of confessions made while a defendant is under arrest, in jail, or in some other place of confinement, unless such confession was voluntarily made after due warning, reduced to writing and signed by the defendant. The facts in this case show that appellant, when the admissions were made and the stolen goods shown to the officers, was not under arrest or in confinement. Furthermore, Art. 727, C. C. P., does not require that the formalities noted above be observed where a defendant makes statements of fact or circumstances that are found to be

true and which conduce to establish his guilt, such as the finding of secreted or stolen property. Under such circumstances, the statements and confessions are admissible, regardless of imprisonment, warning, etc. This court has repeatedly held that statements, admissions and confessions made by a defendant from which fruits of the crime are discovered are admissible regardless of whether they were reduced to writing, or whether warning was given, or whether they were obtained by unfair or deceitful means. Brown v. State, 26 Tex. Crim. App. 313; Jones v. State, 96 S. W. 930; Campbell v. State, 103 Tex. Crim. Rep. 488, 280 S. W. 1068. For collation of authorities see Art. 727, note 12, Vernon's C. C. P., and Branch's Ann. P. C., p. 38.

Bills 6, 8 and 9 complain of the refusal of the court to give appellant's special charges 4, 6 and 7 on the issue of whether or not the admissions and statements discussed above were lawfully obtained. These bills raise the same questions involved in bills 1, 2 and 3, and consequently require no additional discussion.

Bills 4, 5, 7 and 14 complain of the refusal of the court to give appellant's special charges 2, 3, 5 and 9, to the effect that unless the jury believed beyond a reasonable doubt that Harris and the appellant, acting together or separately, were connected with the actual breaking of the seal on the car door in question, appellant should be acquitted. We are of the opinion that the court committed no error in refusing to give these charges, in view of the fact that the court, at the instance of the appellant, gave in connection with the general charge appellant's special charge No. 1, which covered the special charges refused and, in effect, instructed the jury that unless they should find beyond a reasonable doubt that the appellant, either alone or acting with Horace Harris as principal, did break and enter said car, as defined in the main charge, they would acquit him; and that if the jury found from the evidence beyond a reasonable doubt that the appellant received some of the property stolen from said car, they would acquit him unless they found beyond a reasonable doubt that he, alone or acting with Harris, did break and enter said car. We think this charge, in connection with the court's general charge, fully covered all of the issues raised by the testimony in this case, and that the court did not err in refusing to give the special charges contained in these bills.

Bills 10, 11 and 12 complain of the refusal of the court to grant appellant a new trial because it was developed by the evidence on the trial that the foreman of the jury, F. L. Seaman, was in control of, and manager for, the Tyler Produce Company, a corporation owned by the Moore Grocery Company, and

that a part of the goods stolen, including a quantity of cigarettes, were consigned to the Moore Grocery Company. Appellant contends that the connection of this juror with the Tyler Produce Company would constitute him a prejudiced juror to such an extent that he could not render a fair and impartial verdict. The undisputed testimony in this record shows that since the indictment charged that the goods were in the possession of Wood, the railway agent, appellant's counsel did not know, when the jurors were selected, that any of the stolen goods were consigned to the Moore Grocery Company, and that after the jury was empaneled and sworn the court informed appellant's counsel that he would have delivered to them any of the papers pertaining to the shipment of the goods in question if they desired, but no request for the papers was made at the time. The state, in making out its case in chief, introduced evidence showing that some of the cigarettes stolen, concealed and subsequently shown to the officers by appellant, were consigned to the Moore Grocery Company. The appellant's counsel, at this time, made no objection to the juror Seaman, or to a continuation of the trial with the jury as selected, although knowing that Seaman was manager for the Tyler Produce Company, a subsidiary corporation of the Moore Grocery Company. No objection was raised to said juror sitting in the case until motion for new trial was filed. Seaman testified on the motion for new trial that he knew nothing about any of the stolen goods being consigned to the Moore Grocery Company at the time of his selection as a juror, and that he "was not interested in that a bit in the world, financially or otherwise." If the juror Seaman was objectionable to the appellant, or subject to challenge for the reason urged, then it was the duty of the appellant, as soon as said fact was made known to him, to raise his objections then and there. Otherwise, these objections would be waived. This court has often held that in instances of this kind the appellant cannot speculate and experiment on the result of the jury's deliberations and then, after a verdict adverse to him has been rendered, be heard to complain on motion for new trial. DeArman v. State, 80 Tex. Crim. Rep. 147, 189 S. W. 149; Lowe v. State, 226 S. W. 675; Guyon v. State, 89 Tex. Crim. Rep. 287, 230 S. W. 408; Weaver v. State, 291 S. W. 240, on rehearing.

Bill No. 13 complains of the refusal of the court to give appellant's special charge No. 8 to the jury, to the effect that if they found or had a reasonable doubt that the I. & G. N. Railway Company had, on the occasion in question, received the

car from the Cotton Belt Railway Company without delivering to the Cotton Belt "an interchange," or if they found or had a reasonable doubt that the car was burglarized before the I. & G. N. accepted it from the Cotton Belt and that Wood did not have actual care, control and management of said car, to acquit the appellant. The court, in his general charge, paragraph 5, covered all of the points included in this special charge, with the exception of that portion pertaining to the issuance of an "interchange." The record discloses, without dispute, that on the day preceding the burglary the Cotton Belt delivered the car in question to the I. & G. N., that the car was received by Wood for the I. & G. N., "worked out," and closed, as previously stated. Upon cross-examination of the witness Wood by appellant's counsel, it developed that it was customary between the Cotton Belt and the I. & G. N. at Tyler, when a car was delivered as in the instant case, for the receiving company not to make out its receipt until the following day, at which time such receipt was dated as of the day of delivery. It was upon this testimony, we presume, that this special charge was requested. There having been no issue raised on the trial as to the actual receipt of the car by the I. & G. N. prior to the date of the alleged burglary, the court committed no error in refusing to give this special charge.

In bill No. 15 complaint is made to the refusal of the court to give in his charge to the jury the law of circumstantial evidence. It is the contention of the appellant that although the testimony of the state's witnesses showed conclusively that the car in question was entered and burglarized, there was no positive evidence showing that the appellant, either alone or acting in connection with his co-principal Horace Harris, broke into said car, and that the breaking, therefore, was left to inference, which required a charge on circumstantial evidence. We have carefully examined this bill of exception in connection with the record and the authorities thereon, and are unable to reach the conclusion that appellant's contention is correct. The undisputed testimony shows that the appellant voluntarily went to the policeman Tarbutton and had three conversations with him relative to this transaction. Upon the first visit, he did not make any statement with reference to the burglary, but stated to Tarbutton something about a boy who had a bundle at that particular time. Tarbutton testified that on the next night appellant came to his office again and told him where he could find some of the cigarettes, and went with the officer about three and one-half miles and showed him where the cigarettes

were concealed. Appellant returned to the office on the following Monday and had another conversation with Tarbutton in which he informed the witness where some more of the goods could be found. Tarbutton further testified:

"Otis McCurley told us he only made one trip from the car that was burglarized out to this bridge (the place where the cigarettes were found). He told us that the other fellow (Harris) made several trips. * * * All he ever told me was that Horace Harris went in the car and got the stuff and handed it out to him and he put it in an automobile. He didn't say at that time who broke the seal."

Mr. Branch, in his Ann. P. C., Sec. 2368, states:

"In a burglary case if the facts proven are in such close juxtaposition to the main fact to be proved, the breaking and entry, as to be equivalent to direct evidence, a charge on circumstantial evidence is not required," citing Holland v. State, 45 Tex. Crim. Rep. 172, 74 S. W. 765; Smith v. State, 90 S. W. 638; Smith v. State, 51 Tex. Crim. Rep. 427, 102 S. W. 406, and Montgomery v. State, 55 Tex. Crim. Rep. 504, 116 S. W. 1160. Also see Skirlock v. State, 284 S. W. 545, in which this court, speaking through Judge Hawkins, stated on rehearing, after citing many authorities in addition to those cited by Mr. Branch:

"However, examination of these authorities reveals that in each case the party charged with burglary was actually found inside the burglarized house."

It is apparent from the above authorities that where the undisputed facts show that a burglary has been committed, and the defendant was found on the inside of the house burglarized, then under such facts, although there is no positive evidence that the defendant actually did the breaking, it is not error to refuse to charge on the law of circumstantial evidence. In the instant case, as shown by the testimony of the officer Tarbutton, the appellant admitted that his co-principal Harris was in the car and handed goods out to him, and that he took one load over to the bridge, where the goods were hidden, and afterward pointed out to the officers. This admission, in fact, put Harris inside the burglarized car and showed that appellant was aiding and assisting him in getting the goods out of the car, which, in law, constituted appellant a principal and placed him upon the same footing with Harris. Under the law, therefore, appellant is to be considered as having been in the car with Harris. Under the facts of this case and the authorities cited, we are

of the opinion that the refusal of the court to charge the law on circumstantial evidence was not error.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.