T. J. (TROY) GRIMES V. STATE.

No. 24532. December 7, 1949.
Rehearing Denied January 25, 1950.

200

*P. H. Cauthan, Jr.,* Trinity, *C. C. Chessher,* Junction, and *B. L. Collins,* Lufkin, for appellant.

*Joe J. Newman,* County Attorney, Groveton, *W. E. Barron,* District Attorney, Navasota, *R. C. Musslewhite,* (Special Prosecutor) Lufkin, and *George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged by indictment with shooting Philip Harrison with a gun, with malice aforethought, thereby killing him on or about June 24, 1948.

He was put upon his trial on April 13, 1949, and by the jury convicted and assessed a term of fifty years in the penitentiary. He appeals from a judgment herein and complains in eleven bills of exception of alleged errors of the trial court.

The facts herein are brief and show that on the day of the homicide, appellant and two men and a woman were in his station wagon; that they were driving around certain side roads near the line between Trinity and Angelina Counties; that they intended to headlight and hunt deer at nighttime; that they passed a beer tavern, evidently in Trinity County, and drove down a graveled road. Mr. Harrison (the deceased) was at such tavern, and appellant soon turned around and drove back to such tavern, where he purchased some beer and whisky; and deceased also made purchases of two cases of beer and some whisky. Appellant and his companions then drove away, and soon thereafter Mr. Harrison also drove away in the same direction, having at such time an opened bottle of beer on the seat beside him. When next heard of under the state's testimony, appellant and his wife, evidently some two hours thereafter, came into the office of the Sheriff of Angelina County, and appellant notified a deputy sheriff that he had killed a man, Philip Harrison, whereupon the deputy asked, "What did you kill him for?" and appellant replied, "Well, it's an old story, an old grudge, and it is a long story." Appellant told the deputy where such killing took place, where he would find the body, and what he had done with the gun. The deputy then went to the scene as directed, and there found Mr. Harrison seated in his automobile, dead, with a wound near the region of the heart.

Appellant offered the testimony of two witnesses who were with him at the time of the shooting, and they testified to a conversation between appellant and the deceased, and to the theory of self-defense in the beginning of the altercation, and finally to an accidental shooting while engaged in a struggle over a .30-30 rifle belonging to appellant.

Bill of Exceptions No. 1 relates to the fact that a certain witness had seen appellant passing on a road near the house of the witness some three or four weeks prior to the homicide. This statement is not shown to have any materiality, and we do not

think the error, if any, to be of any importance, and the bill is therefore overruled.

As heretofore stated, there are eleven bills of exception in the transcript. We will notice them in the order in which they are presented in appellant's brief.

Bill No. 4 relates to the testimony of Deputy Sheriff Knight of Angelina County relative to the fact that appellant, when asked why he killed Mr. Harrison, said that it was an old grudge, an old story; and he told Mr. Knight where the gun was located and where the body could be found. It seems that this was the first knowledge of the matter that the officer had, and by reason of this statement, he found the body of the deceased, and also obtained the gun from which the shot was fired, which was brought in by the brother-in-law of appellant. After satisfying himself, this officer placed appellant under arrest. We think all of this statement made to the deputy sheriff by appellant was admissible under Art. 727, C. C. P., such statement leading to the discovery of the body of the deceased, and also to the recovery of the weapon that caused the death. It is evident from the testimony that the deputy sheriff (Mr. Knight) knew nothing about this homicide, and that when appellant and his wife appeared at the sheriff's office and appellant announced that he had killed a man and that he wanted to be locked up, the officer did not immediately take him into custody because he "wanted to make sure that he had killed somebody * * * to satisfy my mind, and then I would lock him up." The deputy then questioned appellant as follows:

"Well, I asked him, 'What did you kill him for?' and he said, 'Well, it's an old story, an old grudge and it is a long story.' He said that Philip Harrison and his Daddy had tried to send him to the penitentiary once before. Yes, sir, he told me where he had killed Philip Harrison. No, sir, I had had no report of that shooting before that time from any other person. Yes, sir, he was the first man to report it to me. Yes, sir, he told me where Philip Harrison was. * * * I found Philip Harrison's body as a result of what the defendant told me there in that conversation with reference to why he killed Philip Harrison."

We think the introduction of this testimony is governed by Art. 727, C. C. P., wherein it is said:

"* * * unless in connection with said confesison, he makes statements of facts or circumstances that are found to be true,

which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

It is also worthy of note that in this conversation with appellant, he stated that the gun with which the shooting took place was in possession of his brother-in-law, who later brought in the gun.

There are precedents which might be construed to hold that such a statement was res gestae, and therefore was paramount to Art. 727, C. C. P., and became admissible, although same was not made after a warning but while the accused was under arrest. See Gregory v. State, 50 Tex. Cr. R. 73, 94 S. W. 1041; and the recently decided case of Trollinger v. State, 153 Tex. Cr. R. 364, 219 S. W. (2d) 1018, which is asserted to be in point, as well as Lightfoot v. State, 117 Tex. Cr. R. 515, 35 S. W. (2d) 163; and Clark v. State, 84 Tex. Cr. R. 390, 207 S. W. 98. We do not think these cases to be in point. In the Clark case, supra, the sheriff had a warrant for the accused's arrest and questioned him after he had approached him for the purpose of effecting his arrest, and the statement testified to as coming from the accused in no wise conduced to establish his guilt, as set forth in the statute. The Lightfoot case, supra, is subject to the same objection.

In the Trollinger case, supra, the jailer knew that there had been trouble at the designated place and thought that Trollinger, who was an officer, was bringing an accused to jail; and from the statement made by Trollinger, no new facts were communicated to the jailer save as to who had done the shooting, and no further fact that conduced to establish guilt, such as the finding of the instrument with which the offense was committed, and accused's statement was held to be inadmissible.

We express the opinion that the statement·complained of herein was not res gestae because it was made from an hour and a half to two hours after the homicide had taken place, and after appellant had visited his father's home some miles away, and after he had disposed of his gun. We think the statement was admissible under Art. 727, C. C. P. See 18 Tex. Jur. p. 144, sec. 72; McClure v. State, 100 Tex. Cr. R. 545, 272 S. W. 157; McCurley v. State, 107 Tex. Cr. R. 425, 296 S. W. 559; Miller v. State, 125 Tex. Cr. R. 565, 68 S. W. (2d) 1036; Ramirez v. State, 135 Tex. Cr. R. 442, 125 S. W. (2d) 597; Snow v. State, 106 Tex. Cr. R. 222, 291 S. W. 558; Stelman v. State, 123 Tex.

Cr. R. 330, 58 S. W. (2d) 831; Torrence v. State, 85 Tex. Cr. R. 310, 212 S. W. 957.

Complaint is next made because of the fact that the trial court permitted the state to introduce in evidence before the jury the door of Mr. Harrison's automobile showing certain holes therein which had evidently been repaired prior to the trial hereof. The main objection thereto seems to be that the door was not in the same condition as it was in immediately after the shooting in that it had been repaired by the closing of such holes. We think the door itself would have been admissible on account of appellant's theory that he was falling when a shot was accidentally fired from his rifle; and the direction of the bullet through the outer door, a center metal portion thereof, the glass of the door, and the inner portion thereof, might have had some weight in determining the point or the direction from which the shot was fired. It was further shown that the place of the repair of the door was discernible and that the inner sheet of metal thereof was still unrepaired and a hole therein was present when exhibited at the trial. We think the door was admissible for what it may have been worth in the trial, its condition being sufficiently similar to the time when the shot was fired into the car.

Bill No. 7, complaining of the introduction of the door, was qualified by the trial judge as follows:

"Mrs. Ruth Harrison, the widow of Philip Harrison, testified that she and the deceased owned a 1947 Ford and that the door offered in evidence was the left side door of the car and that Mr. Kilpatrick, who worked at the Ford place at Lufkin, took the door off the car on the morning of the trial. She testified that the door offered in evidence is the door that was on the car that Philip Harrison was in the evening he was killed. She testified she carried the door to the Ford place and that the hole through the metal on the outside of the door was repaired and that a new glass was put in the door.

"There was testimony that the hole through the metal interlining was not repaired and that the hole in the upholstery of the door is where it was then brought to the garage. Mrs. Harrison testified that outside of the repair on the outside of the door and the putting of a new glass in the door, the door is in the same condition as it was after the shooting. No repairs were made to the metal interlining in the door and it was undisputed that the bullet hole there was in the same condition on the day of the trial as on the day of the shooting. The same

thing is true of the hole in the upholstery on the door except that a small patch was sewed above the hole to cover the hole but this in no way changed the nature and appearance in the hole in the upholstery."

There is a complaint made in Bill No. 9 relative to the testimony of a garage mechanic, Lee Dwire, who was not allowed to testify as to his idea of the angle in which a bullet entered the car of Mr. Harrison when asked to do so by appellant's attorney. The bill is qualified by the trial court as follows:

"The State offered to prove by the witness Kilpatrick, who repaired the door, the relative positions of the holes in the outer part of the door, the metal interlining of the door and the upholstery on the inside of the door; the Defendant's attorney objected to this testimony on the ground that the door was already in evidence and that the jury could determine for themselves the question of the relative position of the three holes in the door, and this objection was sustained. Thereafter, the Defendant called witness Dwire for the purpose of giving testimony concerning the relative position of the three holes in the door and the State's counsel objected to that testimony in the following language:

" 'We object to that, now, if the Court, please; counsel objected relative to proof of the relative position of the holes on the door on ground the door speaks for itself.' "

The Court then sustained the state's objection in the following language:

" 'The objection is sustained. I have not let any witness testify to the relative position of the holes. The jury can determine that.' "

The door itself being present, and the place of entry, its progress through the door, and the point of emergence, all being plainly visible and at the inspection of the jury, we think the trial court was correct in allowing the jury to draw their own conclusions rather than to rely on what another might give as to his conclusion relative to what was plaintly visible, and could be seen by each member of the jury. There was nothing peculiar about the door that required the testimony of an expert to explain, and we think anyone who looked at the holes made by a bullet could tell, not only where the bullet came from, but the angle that same traveled while passing through a further metal door and its linings. We also think that the witness Kilpatrick, being the one who repaired the door, should

have been allowed to state, as he did state, and show the jury where the hole on the outside door was and where witness repaired the same as is complained of in Bill No. 8.

Bills Nos. 3 and 5 complain of the fact that two certain witneesses were allowed to testify for the state that they were early at the scene of the shooting and that they perceived no powder burns or discoloration on the car door of Mr. Harrison's car at the point of entrance of the bullet holes. It is shown that there was no testimony as to whether or not a shot fired into painted metal such as a car door would leave a powder burn or discoloration on the metal at any distance, and we see no injury evidenced in such bill.

Appellant, in his motion for a new trial, offers newly discovered evidence in this: That the gun with which the shooting was evidently done, when placed in the hands of the officers, had threads of cloth, hair and skin on the front sight thereof, and that upon an examination of deceased's body his shirt sleeve was torn and a skinned place found on his arm; that these facts were unknown to appellant and his attorneys until after the trial hereof, the gun being in the possession of the officers, and such particles not being present on the gun sight at the time of this trial. This testimony was brought forth by the questioning of Sheriff Johnson, and the then County Attorney Hutson, both of whom were under subpoena and present at the trial, and Mr. Johnson seemed to have testified at length therein. It is shown that appellant left the scene of the homicide; having this gun in his possession; that it was left with his brother-in-law, from whom the officers later recovered it; that the sheriff then had the same in his custody, as well as the deceased's shirt; that neither the sheriff nor the county attorney was asked about the gun nor the shirt, and if asked, they would have told what is now claimed to be newly discovered testimony. The undertaker was not asked anything relative to a skinned place on the arm of the deceased. It is contended that such evidences a lack of diligence. The state further contends that such testimony is but cumulative of that of Mr. and Mrs. Coy Dunn, witnesses who claimed to have seen the whole transaction and were placed on the stand by the appellant. Mr. and Mrs. Dunn testified to practically the same things. They testified that on the afternoon of the homicide, the husband did some work on appellant's car, and they finally decided to go deer hunting at night; that they got into appellant's car and picked up Frank Quarrels who brought along a headlight; that they passed several roads, stopped at a gas station and got some gas, also a beer tavern and got some beer and whisky; and finally

turned off onto a small graveled road on which Frank Quarrels said he saw a squirrel. Appellant and Frank got out, Quarrels taking a .30-30 gun, and they went to kill the squirrel. While they were gone, Mr. Harrison came up in his car, and had some difficulty in passing the appellant's station wagon, and threatened them with going to jail; that appellant came up and was also threatened by Mr. Harrison and asked if he wanted to go to jail. About this time the deceased leaned over towards the glove compartment of his car, and appellant struck at him with the .30-30 gun. Mr. Harrison grabbed the gun, and they struggled over it, and finally the deceased turned loose of the gun and appellant fell back and the gun was discharged, killing Harrison; that appellant said, "My God, I have killed him." Deceased was sitting in his car, and just before that, he had both hands on the gun. After the shooting, appellant and his companions got in their car and drove away.

The only purpose of showing this condition of the gun sight would be as corroborative and cumulative of the struggle as testified to by both Mr. and Mrs. Coy Dunn, and a refusal to grant a new trial for such is not error. See Roberts v. State, 148 Tex. Cr. R. 599, 190 S. W. (2d) 116; Dorsey v. State, 151 Tex. Cr. R. 388, 208 S. W. (2d) 98.

Bill No. 11 also claims error in the court's ruling in refusing to grant a new trial because of the fact that after the trial, appellant's attorney and the sheriff took the .30-30 gun in question and experimented with it and ascertained in such experiment that if fired at a greater distance than two feet into a piece of painted metal similar to the car door in question, that there would be no powder burn or discoloration on the metal. It is observed that all witnesses interrogated relative to powder burns said that they perceived none; and it does not seem to be the theory of either party herein that the shot was fired at a lesser distance than two feet, the defense testimony indicating that appellant was standing by the side of the car and deceased was sitting therein; that a struggle over the gun took place, and appellant finally wrested the gun from the deceased and fell back, whereupon the gun was discharged, Evidently this testimony not only came too late, but is of doubtful significance and probably would not have changed the result. It could only be used to show an absence of discoloration on the door, and that fact was shown by all the witnesses, both for the state and for the defense. Therefore, we do not think it was necessary to further show such by means of the result of an experiment.

The facts are contended to be insufficient. It is noted that the state relied upon certain circumstances which are summarized as follows: It is shown that on the afternoon of the homicide, the deceased was sitting in front of a beer tavern when appellant and his companions passed such tavern; that appellant drove down the road a short distance and turned around and came back to the tavern, and went therein, passing the deceased; that he made some purchases, and came out and drove back down the road, where the squirrel hunt began; that when he returned and after he had shot the deceased and upon the arrival of the officers, an empty .30-30 cartridge was found from 9 to 12 steps from the deceased's car. An opened bottle of beer was found on the seat beside the deceased full of beer; the switch of his car was on and the car was in gear, but the engine was not running; one of deceased's feet was on the brake and the other was on the floor under the clutch; the deceased's body was sitting in the driver's seat but slumped over to the right with a bullet hole near the left breast, the missile still in the body. No weapon was found in the glove compartment; only a small pocket knife was found unopened in deceased's pocket.

Appellant did not testify, and evidently the jury failed to give sanction to the testimony of his witnesses, but seemed to think the circumstances shown evidenced an intentional killing of Philip Harrison with a malicious intent.

The careful trial court, as well as the jury, thought that such circumstances were sufficient to show an intentional rather than an accidental killing, and we would not be authorized to disturb their verdict.

The judgment will therefore be affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a well prepared motion for rehearing. All of the questions presented, however, were considered by us on original submission and any further discussion of them would only be restating what is found in the opinion.

We think the correct conclusion was reached on each and every issue raised and appellant's motion for rehearing is overruled.