Ronald WILHELM, Appellant,

v.

The STATE of Texas, Appellee.

No. 41166.

Court of Criminal Appeals of Texas.

March 27, 1968.

Rehearing Denied May, 8, 1968.

Roy M. Dies, Jr., of Jennings, Montgomery & Dies, (by appointment) Eugene W. McCracken, of Penix, McCracken & Andrews, Graham, (by appointment) for appellant.

T. J. Rodgers, Dist. Atty., Graham, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, 99 years confinement in the Texas Department of Corrections. The trial was had in Navarro County following a change of venue, upon the court's own motion, from Young County where it had originally been transferred from Stephens County upon appellant's motion for change of venue.

This is a companion case to Edwards v. State, Tex.Crim.App., 427 S.W.2d 629 this day decided, and while separate trials were conducted, the evidence adduced at appellant's trial was essentially the same as in the Edwards case. Both cases were argued together on appeal, and appellant's grounds of error Nos. one through six represent counterparts to Edwards' grounds of error Nos. one through five. These grounds of error concern corroboration of the accomplice testimony and the alleged failure to prove venue. Based upon our determination in Edwards v. State, supra, they are overruled.

■ If we understand appellant's seventh ground of error, it is that the court was without authority to submit the issues of guilt and innocence and punishment to the jury in a one stage trial where the State was seeking the death penalty. Rojas v. State, Tex.Crim.App., 404 S.W.2d 30, has been decided adversely to appellant's contention. See also Williams v. State, Tex.Crim.App., 415 S.W.2d 917; Jones v. State, Tex.Crim.App., 416 S.W.2d 412. We would not be inclined to hold that under the Code of Criminal Procedure in effect at the time of appellant's trial (April 17, 1967) the jury was not authorized to assess punishment in one stage trial where the State was seeking the death penalty. It should be noted, however, that the recent amendment to Article 37.07, Vernon's Ann. C.C.P., effective August 28, 1967, provides for bifurcated trials in all criminal cases, other than the misdemeanor trials in Justice or Corporation Court, which are tried before a jury on a plea of not guilty.

In his eighth, ninth, and tenth grounds of error appellant claims the trial court erred in refusing to quash the indictment, and to discharge the appellant on the basis that the trial counsel was not appointed for appellant until 27 days after his arrest. Because of such delay, appellant contends that he was denied an examining trial, competent counsel at his arraignment, and the "advice and investigation of counsel" when such counsel "could have been meaningful to the defendant's defense."

■ The record reflects that appellant was arrested in San Antonio, Texas, on July 7, 1966. Shortly after his arrest he was taken before Justice of the Peace A. A. Semaan, who advised him of outstanding murder warrants from Breckenridge, Texas. He further advised the appellant of his rights to retained or appointed counsel, his right to remain silent, and the fact that anything he might say could be used against him, as well as his right to an examining trial. Such procedure was in full accordance with Articles 14.06 and 15.17, V.A.C.C.P. It further appears that the appellant was given the opportunity to use the telephone, apparently for the purpose of calling his mother. Subsequently, appellant was indicted by the Stephens

County grand jury, and on July 29, 1966, appellant was arraigned in the 90th District Court of Stephens County. On that same date, when appellant's indigency was called to the attention of the court, Attorney William Thompson was appointed to represent appellant, and he aided and advised appellant in entering a plea of not guilty at the arraignment. In accepting such appointment Thompson requested that he not be appointed attorney to represent the appellant at the trial on the merits, since he was a neighbor of the deceased and felt that this acquaintance might prejudice him against the appellant. On August 3, 1966, it appears that at least two of his present attorneys were appointed to represent him.

■ The trial did not begin until April 17, 1967. There is no showing that a confession was elicited from appellant nor that he was prejudiced in any significant manner by the delay in appointment of counsel. In light of the record and in the nature of an arraignment (Article 26.02, V.A.C.C.P.) we find no support for appellant's claim that he was denied competent counsel at that time. Nothing in the record shows appellant requested an examining trial and was refused the same. Further, the right to an examining trial is terminated upon the return of an indicmtent. Article 16.01, V.A.C.C.P.; Gooden v. State, Tex.Cr.App., 425 S.W.2d 645 (delivered March 13, 1968); Bryant v. State, Tex. Crim.App., 423 S.W.2d 320. Appellant's eighth, ninth, and tenth grounds of error are overruled.

Appellant's eleventh and fourteenth grounds of error will be considered together. They relate to appellant's arrest without a warrant by San Antonio police officers on July 7, 1966.

■ In ground of error #11 appellant complains of the failure of the trial court to quash the indictment and discharge the appellant on the basis of an invalid arrest. Without, at the moment, deciding the legality of the arrest, we conclude that the validity of an indictment is in no way related to or based on an arrest, but is an act of the grand jury, and the trial court did not err in refusing to quash the same because of the alleged illegality of the arrest. See Hildebrand v. State, 115 Tex.Cr.R. 245, 29 S.W.2d 774, wherein the same logic is utilized with regards to alleged irregularities in a search warrant and affidavit.

We now decide the question of the validity of the arrest and the admission into evidence of the fruits of the resulting search of appellant's automobile, as raised by appellant's fourteenth ground of error.

■ The State admits that appellant's arrest and the search of the automobile thereafter was without a warrant for either. The arresting officer, Lt. Joe DiStefano of the San Antonio Police Department, testified that he had received information that a murder had been committed in Breckenridge, Texas, and that on July 7, 1966, his investigation concerning this case led him to a motel where three young men fitting the description of the suspects were staying. As he was checking the motel register, an automobile "took off" and he recognized the driver from a previous occasion and knew that he was one of the subjects that he was seeking. Officer DiStefano further related that he had information that they were on their way to Corpus Christi and fearing their escape, he gave chase to the automobile in question and arrested the appellant and McCain in the 5700 block of South Flores Street in San Antonio. Appellant and McCain were returned to the motel where Edwards was arrested, and all three were then taken to the San Antonio Police Station. The arrest took place at approximately 3:15 p. m. and at approximately 5:00 p. m. appellant was taken before the Justice of the Peace, A. A. Semaan, who, in addition to the warnings given, informed him and the other two men of outstanding murder warrants from Breckenridge, Texas, although he was not in possession of the warrants at that time. Officer Robert Tuller of the San Antonio Police Department testified that he assisted in the arrest of the appellant, that he was assigned to drive the auto-

mobile in which appellant was arrested first to the motel and then shortly thereafter to the police storage lot. It appears from Tuller's testimony that the automobile was searched briefly at the time of the arrest and much more thoroughly after it had been removed to the police storage lot not long after the arrest. The automobile contained many personal effects and clothing of the appellant and his companions. It is not clear from Tuller's testimony at which one of the searches a Texas road map, State's Exhibit No. 35, was discovered in the glove compartment of the 1959 Oldsmobile.

We conclude that Officer DiStefano was authorized under the provisions of Article 14.04, V.A.C.C.P., to arrest appellant without a warrant under the circumstances here presented.[1] Scobey v. State, 145 Tex.Cr.R. 481, 169 S.W.2d 185; Lee v. State, 148 Tex. Cr.R. 220, 185 S.W.2d 978; Ware v. State, 151 Tex.Cr.R. 228, 207 S.W.2d 868; Edmond v. State, 169 Tex.Cr.R. 637, 336 S.W. 2d 946; Pennington v. State, Tex.Crim. App., 364 S.W.2d 376, and that the Texas road map was properly admitted into evidence as fruits of a search incident to a lawful arrest. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

We are cognizant of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, however, as we said in Taylor v. State, Tex.Crim.App., 421 S.W.2d 403:

"It is doubtful if Preston should be interpreted to mean a police officer must under all circumstances search or complete the search of the vehicle at the moment of arrest when an equally prudent course of action would be to move the vehicle to a more convenient or suitable location for the search."

\* \* \* \* \* \*

"We are inclined to believe that the holding in Preston turned upon the lack of

continuity in purpose by the arresting officers there. See State v. Wood, 197 Kan. 241, 416 P.2d 729; Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68; Arwine v. Bannan (6th Cir.) 346 F.2d 458."

Even assuming that the road map was found as a result of the search at the police storage lot, we conclude from the evidence that the search properly commenced at the scene of the arrest was continued at the storage lot after only a slight delay with the same continuity of purpose by the arresting officer.

In view of our disposition of the search question, we need not further decide whether the search was also reasonable since the officer was making a lawful inventory of personalty found in a lawfully impounded vehicle, see People v. Myles, 189 Cal.App. 2d 42, 10 Cal.Rptr. 733, or determine whether there were other grounds justifying the search.

■ Appellant further contends in his fourteenth ground of error that the Texas road map should have been excluded because the testimony showed that such map had been altered after it was taken into the possession of the arresting officer. The alteration consisted of a "slight circle around the community of Graham, Texas." Upon the admission of the map into evidence the court admonished the jury not to consider for any purpose the fact that there was a penciled in circle around Graham.

The controlling rule concerning the alteration of real evidence is stated in 2 McCormick and Ray, Texas Law of Evidence, p. 310, Sec. 1458, 2nd Ed.:

"It may happen that the present condition of an article or object is not the same as at the time in question nor so nearly the same as to be of any probative value in determining its former condition, whence proceeds the limitation that real evidence is proper only where the condi-

1. It also appears from the record that the Suspicious Persons Ordinance of the City of San Antonio was introduced without objection. See Article 14.03, V.A.C.C.P., in effect at time of appellant's trial.

tion is the same or sufficiently similar. The decision as to whether the offering party has made a sufficient showing or similarity of condition is one resting in the discretion of the trial court."

See Grimes v. State, 154 Tex.Cr.R. 199, 225 S.W.2d 978. The trial court did not abuse its discretion in admitting the map into evidence. Appellant's eleventh and fourteenth grounds of error are overruled.

■ Appellant next complains that he was deprived of his right to a fair and impartial jury because the trial court overruled appellant's objection to the court's excusing venirewoman Willie Reamy for cause on the basis that she had conscientious scruples against the infliction of the death penalty, and further, that all other veniremen expressing similar conscientious scruples were correspondingly excused. The voir dire examination of the jury panel is not before us. The fact that Mrs. Reamy was so excused for cause is reflected by a "Judge's Bill of Exception" entered in the record on the court's own motion.

In McCandless v. State, Tex.Cr.App., 425 S.W.2d 636 (delivered February 28, 1968) we had before us a similar question. There we said:

"No testimony was adduced on the motion, and the voir dire examination of the jury panel was not brought forward in the record. There is therefore no showing that the jurors selected were qualified on the death penalty. This ground of error is not before us for review. Even if there had been a showing that the jurors were so qualified, no error would have been presented. Article 35.16(b), Sec. 1, V.A.C.C.P.; Ellison v. State, Tex. Cr.App., 419 S.W.2d 849; Crane v. State, Tex.Cr.App., 394 S.W.2d 165. See also Bingham v. State, 163 Tex.Cr.R. 352, 290 S.W.2d 915; Cert. den. 352 U.S. 858, 77 S.Ct. 79, 1 L.Ed.2d 64; Enriquez v. State, Tex.Cr.App., —— S.W.2d —— (No. 41,-061—Feb. 14, 1968)."

Appellant in his thirteenth ground of error complains that the trial court erred in permitting the State to show Exhibits Nos. 17, 18 and 19, which were pictures of the deceased to witnesses even though such pictures were never shown to the jury nor introduced into evidence. Appellant contends that the mere discussion of "these exhibits in the presence of the jury was prejudicial to the defendant in that the only possible inference to be drawn by the jury from such procedure was that the photographs were so gruesome or inflamatory that they could not see them."

■ The exhibits in question were shown to three witnesses. The first witness, out of the presence of the jury, proved up the accuracy and authenticity of what they purported to represent. When the jury returned, the same witness, upon being asked, responded, without elaboration, that he had identified the exhibits and that they were of the body of the deceased. No objection was made to any of these proceedings. In response to an objection by appellant that the witness did not know the deceased, the pictures were next shown to a witness who identified the body as that of the deceased. While the jury was not removed from the courtroom, the transcription of the court reporter's notes makes clear that the prosecutor stood between the jury and the witness when the pictures were shown to the second witness. The only objection voiced at this time by appellant was that the State was attempting to bolster its witness. The third and final time the pictures were shown to a witness the State's attorney again stood between the jury and the witness, and the witness simply identified the photographs as being the body of the deceased. No objection was made. Therefore, this ground of error is without merit.

Finding no reversible error, the judgment is affirmed.